UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| YOLANDA VIDALES ABREGO,          )<br>                                                        )<br>           Plaintiff,                              )<br>                                                        )<br>v.                                                    )<br>                                                        )<br>                                                        )<br>MICHAEL J. ASTRUE,                    )<br>Commissioner of Social Security,    )<br>                                                        )<br>           Defendant.                          ) | CIVIL ACTION NO.<br>5:11-CV-00218-BG<br>ECF |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. § 405(g), Plaintiff Yolanda Vidales Abrego seeks judicial review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Pursuant to the Order of transfer, the undersigned now files this Report and Recommendation.

On February 22, 2010, Abrego and a vocational expert testified at a hearing before an administrative law judge (ALJ). Abrego was represented by counsel at the hearing. The ALJ determined on April 8, 2010, that Abrego was not disabled because she could perform jobs that existed in significant numbers in the national economy. The Appeals Council denied review on October 6, 2011. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a

1

claimant's] request for review").

## Standard of Review

A plaintiff is disabled and may be entitled to disability insurance benefits if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (2012).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. § 404.1520(a)(4) (2012). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1520(a)(4); 404.1545(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## **Factual Background**

Abrego dropped out of school in tenth grade and subsequently obtained a GED. (Tr. 33, 118.) She previously worked as an office clerk, cashier, and cake decorator. (Tr. 34, 114.) She claims that she became disabled on March 31, 2005, due to chronic back and neck pain and hand weakness. (Tr. 113.)

Abrego's insurance status expired on March 31, 2010. (Tr. 109.) To qualify for benefits, she must therefore establish that her disabling condition existed prior to that date. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status.") (quoting *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

## **Discussion**

Abrego argues that the ALJ did not apply the proper legal standard to determine whether her mental impairments were severe. (Pl.'s Br. 20–21.) In addition, she argues that substantial evidence does not support the ALJ's conclusions regarding the duration of her mental impairments. *Id.* at 21–23. Finally, she asserts that the ALJ did not consider the combined effect of her impairments. *Id.* at 23–24.

I.  **The ALJ applied the proper legal standard to determine whether Abrego's mental impairments were severe.**

Pursuant to the regulations governing Social Security claims, a combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Court of Appeals for the Fifth Circuit reaffirmed that an impairment is not severe under this regulation only if the impairment "is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)) (alteration in original). The court also stated that it would assume that the ALJ applied an incorrect severity standard "unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect[.]" *Stone*, 752 F.2d at 1106.

The following year, the court clarified that a case "will not be remanded simply because the ALJ did not use [*Stone*'s] 'magic words.'" *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Rather, the court held that remand was warranted only where there was "no indication that the ALJ applied the correct standard[,]" such as when the ALJ relied solely on the language of the regulations. *Id.*

In this case, the ALJ found that Abrego had the following severe impairments: "a history of chronic back pain, a sensorineural hearing loss since childhood, and hypertension." (Tr. 18.) He explicitly reasoned that these impairments "would have more than a slight effect on [Abrego's] ability to work." *Id.* Earlier in his opinion the ALJ explained, "An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an

4

individual's ability to work." (Tr. 17.)  Although the ALJ did not cite any cases when explaining his severity finding, the foregoing language is sufficiently similar to that in *Stone* to indicate that he applied the correct severity standard and did not rely solely on the language of the regulations. *Compare Hampton*, 785 F.2d at 1311 (remanding case because there was "no indication in the opinion that the ALJ applied the correct standard" and the ALJ "relied solely on the language of the present regulation").

In addition, remand is not required because substantial evidence supports the ALJ's implied step 2 finding that Abrego's mental impairments were not severe under the standard articulated in *Stone* and the regulations.  *See LeBlanc v. Chater*, No. 95-60547, 1996 WL 197501, at *2 (5th Cir. March 21, 1996) ("[W]e hold that where the record in a disability insurance case clearly establishes that both the *Stone* and CFR standard is satisfied, remand is not necessary even though the [ALJ's] decision fails to expressly articulate the 'slight impairment' standard established in *Stone*.").  In other words, substantial evidence supports the conclusion that Abrego's mental impairments were slight abnormalities with such minimal effect that they (1) would not be expected to interfere with her ability to work and (2) did not significantly limit her ability to do basic work activities.  *See Stone*, 752 F.2d at 1101 (articulating "slight abnormality" standard) (quoting *Estran*, 745 F.2d at 341); 20 C.F.R. § 404.1521(a) (articulating regulation standard).

In her application for benefits, Abrego did not indicate that any mental impairments limited her ability to work.  (Tr. 113.)  Hemmo Bosscher, M.D., who treated Abrego's back pain from January 2004 through May 2006, repeatedly opined that she was quite intelligent and cooperative with an appropriate affect and demeanor and a grossly normal memory.  (Tr. 163, 165, 167, 169, 173, 176, 179, 181, 184, 186, 190, 193, 195, 198–201, 204, 206, 209.)  Dr. Bosscher consistently

5

found that Abrego exhibited no anxiety or depression, and he twice reported that she answered questions and followed commands appropriately. (Tr. 162, 169, 171, 173, 176, 179, 181, 184, 186–87, 190, 193, 195, 198, 201, 204, 209, 212.) In August 2006, Elias Ghandour, M.D., reported that Abrego was cooperative and that her mental status was normal prior to an endoscopy. (Tr. 484, 486.) A physician who treated Abrego for abdominal pain from February through April of 2008 reported that she was pleasant, exhibited good insight and judgment, and reported no anxiety or depression. (Tr. 233–34, 469–70.) At appointments with cardiologist Juan Kurdi, M.D., in March and April of 2009, Abrego reported no memory loss, confusion, anxiety, or depression. (Tr. 287, 289, 291.)

In September 2009, neurologist A. Alex D'Cruz, M.D., examined Abrego and observed, "Mood is depressed. (She has never been treated for depression.)" (Tr. 426.) Dr. D'Cruz also reported that Abrego's cognitive function and coordination were intact and that she was neatly dressed despite her depression. (Tr. 422, 427.) Later that month, Abrego's psychiatric condition was noted to be stable by Mario Pena, M.D., who had served as Abrego's general physician since at least August 2006. (Tr. 529, 536.) On October 7, 2009, Dr. Kurdi examined Abrego for chest pain and noted no psychological symptoms. (Tr. 451.) One week later, Dr. Ghandour treated Abrego for nausea and reported that she exhibited no memory loss and that she had a normal mood and affect. (Tr. 444–45.) Three days after that, he found that her mental status examination was normal. (Tr. 438.)

On November 12, 2009, treating psychiatrist John Cobb, M.D., examined Abrego and diagnosed her with severe major depressive disorder and generalized anxiety disorder. (Tr. 523.) At five appointments from November 2009 through April 2010, Dr. Cobb observed that Abrego was

6

well oriented, neatly dressed, and well groomed. (Tr. 517, 522, 545, 549, 553.) At those appointments, he also reported that her speech was logical and coherent and that her recent and remote memory appeared unimpaired. (Tr. 517, 522, 545, 549, 553.) In addition, he found that she exhibited good judgment and a negligible degree of conceptual disorganization. (Tr. 517, 522–23, 545, 549, 553.) He likewise reported that she was cooperative, interested, reflective, and able to attend and maintain focus and resist urges. (Tr. 517, 523, 545, 549, 553.)

Abrego repeatedly reported that the medications prescribed by Dr. Cobb improved her anxiety and depression. (Tr. 35, 39, 516, 528, 544, 552.) In April 2010, she told Dr. Cobb that her mood was normal and stable, her anxiety was well controlled, and she had experienced only one acute anxiety attack since March 11, 2010. (Tr. 544.)

In April 2009, Abrego reported that she regularly watched television, read, and paid bills. (Tr. 136.) She also stated that she drove, shopped five or six times per month, read well, talked with her children daily, visited with them in person two to three times per week, attended her grandchildren's sporting events once per week, followed written and spoken instructions well, and got along well with authority figures. (Tr. 139–42.) In addition, she reported that she could go out by herself without reminders, count change, use a checkbook, use money orders, and pay attention "all the time." (Tr. 139–41.) At the hearing before the ALJ in February 2010, she reaffirmed that she shopped, watched television, read books, and socialized over the telephone and in person with her children and grandchildren. (Tr. 37–41.)

In sum, the language that the ALJ used to explain his reasoning and the existence of substantial evidence to support his conclusion regarding Abrego's mental impairments indicate that he applied the correct severity standard. *See Hampton*, 785 F.2d at 1311 (requiring remand "only

7

where there is no indication the ALJ applied the correct standard" enunciated in *Stone*).

II.  Substantial evidence supports the ALJ's conclusions regarding the duration of Abrego's mental impairments and their favorable response to treatment.

The ALJ concluded that Abrego's mental impairment "responded favorably to treatment in less than a year" and did not meet the duration requirement. (Tr. 20.) Substantial evidence supports this conclusion. The "duration requirement" refers to the requirement that a claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" or result in death. 20 C.F.R. § 404.1509. Having been first diagnosed with depression in September 2009, Abrego reported to Dr. Cobb that her mood was normal and stable and that her anxiety was well controlled with medication at her last appointment of record with him on April 7, 2010. (Tr. 426–27, 544.) Accordingly, the ALJ's finding that Abrego's mental impairments resolved within that time frame is supported by substantial evidence. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

After concluding that Abrego's mental impairment did not meet the duration requirement, the ALJ made the following comment: "Therefore, despite being somewhat limited by symptoms of depression for a three month period . . . I find no symptoms of the level of severity to wholly compromise her ability to initiate and sustain activities and function independently and effectively on a sustained basis." (Tr. 20.) The previously discussed substantial evidence that supports the ALJ's findings regarding severity and duration also supports the ALJ's conclusion that Abrego's depressive symptoms did not "wholly compromise her ability to initiate and sustain activities and function independently and effectively on a sustained basis." *Id.*

Abrego appears to argue that substantial evidence does not support the portion of the ALJ's

8

comment in which he indicates that her depressive symptoms limited her for three months. (Pl.'s Br. 22–23.) In support of her argument, she cites an appointment with Dr. Cobb in March 2010 – approximately six months after she was first diagnosed with depression – in which she reported "depressed mood, generalized anxiety, . . . outbursts of episodic acute anxiety spells and also irritability." *Id.*; (Tr. 548.) She also reported that she was "isolating" due to her depression and that her health was "not good" at that appointment. (Tr. 548.) Dr. Cobb assessed Abrego's suicide risk as mild and increased her medication to address difficulties with anxiety, irritability, and depression. (Tr. 548–49.)

Abrego's March 2010 appointment, which occurred less than one year after she was diagnosed with depression, does not undermine the previously described substantial evidence that supports the ALJ's conclusions that Abrego's depression was not severe and lasted less than one year. To the contrary, at that appointment Dr. Cobb found that Abrego exhibited logical, coherent speech; unimpaired memory; good judgment; the ability to attend and maintain focus; and the ability to resist urges. (Tr. 549.) The following month, Abrego told Dr. Cobb that her mood was normal and stable and that her anxiety was well controlled at her last appointment of record. (Tr. 544.) For the foregoing reasons, Abrego's argument does not "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, --- F.3d ----, No. 11-30975, 2012 WL 3553622, at *3 (5th Cir. Aug. 20, 2012). Abrego has not met that burden. *See id.* (affirming Commissioner's decision where only prejudice alleged by claimant was that additional evidence "might tip the balance in plaintiff's favor").

9

III.     The ALJ considered the combined effect of Abrego's impairments.

Finally, Abrego argues that the ALJ did not consider the combined effect of Abrego's impairments. (Pl.'s Br. 23–24.) It is true that an ALJ "must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.'" *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (quoting *Dellolio v. Heckler*, 705 F.2d 123, 128 (5th Cir.1983)).

In support of her argument, Abrego lists twenty-eight impairments referenced in her medical records that she claims the ALJ did not consider in combination. (Pl.'s Br. 24.) However, the mere existence of impairments does not establish disability; a claimant must show that the impairments or combination thereof meets the duration requirement and is so severe that it prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability"); 20 C.F.R. §§ 404.1505 (same), 404.1509 (explaining the duration requirement), 404.1520 (explaining five-step process that ALJs must follow). Abrego has not done so.  In addition, the ALJ explicitly recognized that he had to consider Abrego's combination of impairments in his review of applicable law. (Tr. 17.) He also recognized that he was required to consider all of Abrego's impairments, "including impairments that are not severe" when determining her RFC. *Id.* Following these requirements, the ALJ included a variety of exertional and non-exertional limitations in Abrego's RFC. (Tr. 20.) He expressly found that Abrego's impairments did not satisfy step 3 "either singularly or in combination" and stated that he considered "all symptoms," "the medical records as a whole," and "the evidence in its entirety." (Tr. 18, 20–22.) Accordingly, Abrego's argument does not require remand. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir.1994) (rejecting claimant's conclusory argument that ALJ failed to consider the combined effects of his impairments because

the ALJ expressly referenced the claimant's combination of impairments at step 3, stated that he considered "the evidence as a whole," and used other similar language in his opinion).

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Abrego's complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated: September 28, 2012.

*/s/ Nancy M. Koenig*
NANCY M. KOENIG
United States Magistrate Judge

11